# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

Number 09-569C

Senior Judge Robert H. Hodges, Jr.

SYNERGY SOLUTIONS, INCORPORATED,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Cyrus E. Phillips IV
Colonial Place I
2111 Wilson Boulevard, Suite 700
Arlington, Virginia 22201-3052
Attorney of record for Plaintiff, Synergy Solutions, Incorporated.

REDACTED VERSION FILED IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………………ii-iv

QUESTIONS INVOLVED ……………………………………………………………1

I.    WERE THERE COMMUNICATIONS WITH SANTA FE PROTECTIVE SERVICES,
      AND IF SO, WERE THESE COMMUNICATIONS UNLAWFUL DISCUSSIONS? ………………… 1

II.   IS THIS BEST VALUE TRADE-OFF ANALYSIS GROUNDED IN REASON? …………………… 1

III.  IS DISCOUNTING THE DOE TECHNICAL REPRESENTATIVE'S COST REALISM ADJUSTMENT
      RATIONAL? ………………………………………………………………… 1

STATEMENT OF THE CASE …………………………………………………………1-28

ARGUMENT ………………………………………………………………28-37

I.    THERE WERE COMMUNICATIONS WITH SANTA FE PROTECTIVE SERVICES,
      AND THESE COMMUNICATIONS WERE UNLAWFUL DISCUSSIONS …………………… 28-33

II.   THIS BEST VALUE TRADE-OFF ANALYSIS IS NOT GROUNDED IN REASON………………… 33- 36

III.  DISCOUNTING THE DOE TECHNICAL REPRESENTATIVE'S COST REALISM ADJUSTMENT
      IS IRRATIONAL AND ARBITRARY ………………………………………………… 36-37

CONCLUSION ………………………………………………………………38-39

CERTIFICATE OF SERVICE …………………………………………………………40

- i -

### TABLE OF AUTHORITIES

*STATUTES*

5 U.S.C. § 101................................................................................2

10 U.S.C. § 2305(b)(4)(A)(i)...............................................................32

10 U.S.C. § 2305(b)(4)(C)..................................................................34

28 U.S.C. § 451.............................................................................2

28 U.S.C. § 1491(b)(1)......................................................................2

41 U.S.C. § 253b(d)(1)(A)..................................................................32

41 U.S.C. § 253b(d)(3)......................................................................34

41 U.S.C. § 254(b)..........................................................................31

42 U.S.C. § 7131............................................................................2

42 U.S.C. § 7256(a).........................................................................2

*REGULATIONS*

Federal Acquisition Regulation 1.102(b)(3)..........................................35, 38

Federal Acquisition Regulation 1.102-2(c)(3)........................................35, 38

Federal Acquisition Regulation 15.101-1.............................................13, 32

Federal Acquisition Regulation 15.101-2................................................32

Federal Acquisition Regulation 15.306(a)............................................15, 29

Federal Acquisition Regulation 15.306(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29-30

Federal Acquisition Regulation 15.306(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Federal Acquisition Regulation 15.306(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Federal Acquisition Regulation 15.306(d)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Federal Acquisition Regulation 15.308. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Federal Acquisition Regulation 15.404-1(c)(2)(iii)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Acquisition Regulation 15.404-1(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Acquisition Regulation 15.404-1(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15, 35

### CASES

*Banknote Corporation of America, Inc. v. United States,*
56 Fed. Cl. 377 (2007),
*aff'd*, 365 F.3d 1345 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Bechtel Hanford, Inc.,*
B-292288, B-292288.2, B-292288.3, August 13th, 2003, *2003 U.S. Comp. Gen. LEXIS 187*. . . . . . . . . . . . . . . . . . .35

*Computer Sciences Corp.; Unisys Corp.; Northrop Grumman*
*Information Technology, Inc.; IBM Business Consulting Services-Federal,*
B-298494.2 et al., May 10th, 2007, *2007 U.S. Comp. Gen. LEXIS 101*. . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Diversified Maintenance Systems, Inc. v. United States,*
74 Fed. Cl. 122 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Dynacs Engineering Company, Inc. v. United States,*
48 Fed. Cl. 124 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32, 35

*Serco, Inc. v. United States,*
  81 Fed. Cl. 463 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33, 37

*Serco, Incorporated*, B-298266, August 9th, 2006, *2006 U.S. Comp. Gen. LEXIS 131*. . . . . . . . . . . . . . . . . . . . . 36-37

*TRW, Inc. v. Widnall*,
  98 F.3d 1325 (Fed. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Urban Data Systems, Inc. v. United States*,
  699 F.2d. 1147 (Fed. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

---

## QUESTIONS INVOLVED

I.  Were there communications with Santa Fe Protective Services, and if so, were these communications unlawful discussions?

II.  Is this Best Value Trade-off analysis grounded in reason?

III. Is discounting the DOE Technical Representative's Cost Realism adjustment rational?

---

## STATEMENT OF THE CASE

### PARTIES

PLAINTIFF AND ITS TEAMING PARTNERS

Synergy Solutions is a Tennessee corporation and a small, woman-owned support services business certified by the U.S. Small Business Administration as a small and disadvantaged 8(a) company. Synergy Solutions has been in operation since 2004 and has provided support services to the nuclear complex of the U.S. Department of Energy's (DOE's) National Nuclear Security Administration (NNSA) and to the National Aeronautics and Space Administration. The princi-

**Redacted Version**

- 1 -

pals of Synergy Solutions have a combined 25 years of experience in safety and security and hold

DOE "Q" security clearances. Synergy Solutions has provided technical and management sup-

port in safeguards and security systems services at DOE's Nevada Test Site. Statement of Facts,

Number 1.

Synergy Solutions is teamed with PAI Corporation, Oak Ridge, Tennessee (PAI Corpora-

tion). PAI Corporation, a proposed subcontractor, is a small, woman-owned business with a 25-

year record with DOE programs in health, safety, and security. PAI Corporation has NNSA Con-

tracts for safeguards and security support services at the Y-12 Plant and at the DOE Nevada Site

Office. PAI Corporation provides performance assurance oversight in safeguards and security as

a subcontractor at DOE's Oak Ridge facility. Statement of Facts, Number 2.

DEFENDANT

Defendant DOE is established at the seat of Government, 42 U.S.C. § 7131, and DOE is an

Executive Department of the United States, 5 U.S.C. § 101. DOE has the authority to enter into and

administer Contracts. 42 U.S.C. § 7256(a). DOE is an "agency" just as this term is defined in 28

U.S.C. § 451, and thus DOE is also a "Federal agency" as is required by 28 U.S.C. § 1491(b)(1).

NNSA was established in 2000 under Title XXXII of the National Defense Authorization Act for

Fiscal Year 2000, Public Law Number 106-65, and NNSA is a separately-organized Agency with-

**Redacted Version**

- 2 -

in DOE. NNSA is responsible for the management and security of this nation's nuclear weapons, for nuclear nonproliferation, and for naval reactor programs. NNSA's Service Center provides procurement, human resources, and other support services. NNSA's Service Center is a tenant activity at Kirtland Air Force Base, Bernalillo County, New Mexico. DOE, NNSA, and NNSA's Service Center are instrumentalities of the United States. Statement of Facts, Number 3.

Santa Fe Protective Services and its Teaming Partners

Santa Fe Protective Services, Incorporated, 625 Silver SW, Suite 325, Albuquerque, New Mexico 87102 (Santa Fe Protective Services) is a small, woman-owned 8(a) business which was established in 1999. Santa Fe Protective Services won a multi-year Firm Fixed-Price, Fixed-Fee security services Contract for DOE's Waste Isolation Pilot Project in 2001. Statement of Facts, Number 4.

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████] Statement of Facts, Number 5.

**Redacted Version**

- 3 -

## THE SOLICITATION

THE ACQUISITION PLAN FOR A CONTINUING REQUIREMENT

NNSA's Service Center requires continued Contractor support services to assist its Personnel Security Department in the management and implementation of security programs which support Lawrence Livermore National Laboratory, Los Alamos National Laboratory, Pantex Plant, Y-12 Plant, Nevada Test Site, Kansas City Plant, Sandia National Laboratories, and other NNSA facilities. These support services are currently being provided under a Cost-Plus-Award-Fee (CPAF) Contract which will expire on November 18th, 2009. The current Contract can be extended for up to six months. Statement of Facts, Number 6.

The proposed successor Contract is a Cost-Plus-Fixed-Fee (CPFF) term type Contract with a two-year Base period and three one-year Options. The Acquisition Plan for the proposed successor Contract requires that the successful Offeror have the ability to "maintain manpower levels and to manage personnel turnover." Primary task areas for the proposed successor Contract are program management; training; adjudication; clearance management and processing; Foreign Ownership, Control, or Influence determinations; facility registration; and records and information management. Per the Acquisition Plan, office space and equipment for some one-hundred people will be

provided under the proposed successor Contract, and these are on-site at Kirtland Air Force Base. Statement of Facts, Number 7.

The Acquisition Plan says that because labor mix, labor rates, and labor hours have "historically varied widely from month-to-month," the proposed successor Contract will be awarded on an estimated Level of Effort (LOE)/Direct Productive Labor Hours (DPLH) basis wherein the successor Contractor will be obligated to provide yearly neither less than ninety-five percent nor more than one-hundred five percent of the total negotiated DPLHs. The successor Contractor will not be authorized to exceed one-hundred five percent of the total negotiated DPLHs in any one year except with an agreed-upon Contract modification. Statement of Facts, Number 8.

THE INDEPENDENT GOVERNMENT COST ESTIMATE



]. The IGCE is prepared by DOE's technical personnel in accordance with Federal Acquisition Regulation 15.404-1(c)(2)(iii)(D). Statement of Facts, Number 9.

**Redacted Version**

- 5 -

THE SOURCE SELECTION PLAN

The Source Selection Plan of December 5th, 2008 establishes an Integrated Product Team to evaluate separate Technical and Cost Proposals and designates the Contracting Officer as the Source Selection Authority. Four Evaluation Criteria are set out for the Technical Proposals: "Approach," "Staffing Plan and Program Manager Qualifications," "Experience," and "Past Performance." These four Evaluation Criteria are to be adjectively rated. Cost Proposals are not to be rated. The Source Selection Plan provides that a "cost realism analysis of the proposal will be conducted to determine what the Government should realistically expect to pay for the proposed effort, the Offeror's understanding of the work, and the Offeror's ability to perform the contract." Statement of Facts, Number 10.

A Division Director within the NNSA Service Center's Personnel Security Department is designated as the single DOE Technical Representative to the Integrated Product Team. This single DOE Technical Representative is required to "assist" the Contracting Officer by "performing a technical evaluation of the cost proposal[s]," and the Cost Proposals are to be provided to this DOE Technical Representative after completion of the adjectival ratings of the Technical Proposals for a Cost Realism review by the DOE Technical Representative. The Contracting Officer (who is also the Source

Selection Authority) remains responsible for the Cost Realism analysis. Statement of Facts, Number 11.

THE SUCCESSOR SOLICITATION FOR SUPPORT SERVICES

The Solicitation for a successor support services Contract, Solicitation Number DE-RP52-09NA28681 was issued by NNSA's Service Center on December 15th, 2008. This Acquisition is set-aside for small businesses and seeks Competitive Proposals for administrative and technical support services to be provided to NNSA's Personnel Security Department. The Personnel Security Department's program responsibilities include personnel security program support to a NNSA clearance population of 52,000 Contractor and Federal employees. The work includes personnel security adjudicative and processing activities, as well as requesting and analyzing the required background investigations of approximately 8,200 clearance holders and 4,000 applicants per year. Security reviews for approximately 9,500 human reliability program incumbents per year are required. The Awardee performs processing, as well as adjudication functions. Investigations are conducted by the Office of Personnel Management (approximately 9,000 to 11,000 investigations and reinvestigations annually) and by the Federal Bureau of Investigation (approximately 500 to 600 investigations annually). Support for the Foreign Ownership Control and Influence Program is also required—these determinations are made on prospective DOE Contractors and on their parent companies prior to granting

**Redacted Version**

a facility clearance or awarding a Contract requiring access authorization. The population of active

facility clearances is approximately 850. Statement of Facts, Number 12.

These administrative and technical support services are principally to be furnished on-site at

Kirtland Air Force Base, Bernalillo County, New Mexico, there using DOE-provided office space,

applications software, equipment, and supplies. The Contract proposed by Solicitation Number DE-

RP52-09NA28681 requires also that the Awardee operate the personnel security vault and be res-

ponsible for some 52,000 active personnel security files. The Awardee is required to create and up-

date database records and to administer and maintain all intra- and inter-office management infor-

mation systems. Services are to be furnished from Monday through Friday each week between core

hours of 9:00 a.m. and 3:00 p.m. Statement of Facts, Number 13.

The period of performance for the proposed Contract runs from date of award through Novem-

ber 2011. The transition/phase-in period is November 19th, 2009 through December 18th, 2009.

Three one-year Options are also available to DOE. The Contract proposed by Solicitation Number

DE-RP52-09NA28681 places a ceiling of $25,000 on transition Costs and a ceiling of $200,000 on

Other Direct Costs for each year of the five-year term of the proposed Contract. Statement of Facts,

Number 14.

**Redacted Version**

Offerors under Solicitation Number DE-RP52-09NA28681 are to propose an estimated total number of DPLHs for each year of the five-year term of the proposed Contract. This estimated total number of DPLHs represents the Awardees' obligation to deliver support services—the Contractor must deliver not less than ninety-five percent and may not deliver more than one-hundred five percent of the estimated total number of DPLHs during each year of the five-year term of the proposed Contract. Each Offeror is to specify the estimated total number of DPLHs it proposes to deliver. Fixed-Fee, if any, proposed by an Offeror is to be paid based on furnishing at least ninety-five percent of the estimated total number of DPLHs that Offeror proposes to deliver. If the Contractor delivers less than ninety-five percent of the estimated total number of DPLHs that Offeror proposes to deliver, then Fixed-Fee is reduced in proportion to the ratio of the estimated DPLHs to the DPLHs actually provided. The Contractor is not obligated, and is not authorized, to deliver more than one-hundred five percent of the estimated total number of DPLHs during each year of the five-year term of the proposed Contract. Statement of Facts, Number 15.

These requirements to propose an estimated total number of DPLHs for each year of the five-year term of the proposed Contract, and the restrictions on Fixed-Fee and on delivery of DPLHs in excess of one-hundred five percent of the estimated total number of DPLHs during each year of the five-year term of the proposed Contract, are set out in Section B, the Proposal Schedule, of Solicita-

tion Number DE-RP52-09NA28681. Per Solicitation Number DE-RP52-09NA28681, Offerors are to fill out Section B in its entirety and return it with their Competitive Proposals. Beyond the estimated Cost and Fixed-Fee to be proposed separately for each year of the five years of the term of the proposed Contract, the last two pages of Section B include Contract Clause B010 LEVEL OF EFFORT (LOE)/DIRECT PRODUCTIVE LABOR HOURS (DPLH) (FEB 2005) (TAILORED) and Contract Clause B015 OPTION TO EXTEND THE TERM OF THE CONTRACT—SERVICES (FEB 2005) (TAILORED). Statement of Facts, Number 16.

ANNOUNCED TECHNICAL AND COST EVALUATIONS

DOE has announced that it will review Technical Proposals submitted in response to Solicitation Number DE-RP52-09NA28681 against four Evaluation Criteria: "Approach," "Staffing Plan and Program Manager Qualifications," "Experience," and "Past Performance." "Approach" is to be evaluated by rating an Offeror's narrative of its proposed Technical approach for accomplishing three selected requirements from the Performance-Based Work Statement (PBWS) included with the proposed Contract: end-to-end adjudication of a security clearance; processing a request for security clearance; and recommending a Foreign Ownership, Control or Influence determination and a facility approval and registration. "Staffing Plan and Program Manager Qualifications" is to be evaluated by rating an Offerors' Staffing Plan, that is, the Offeror's description of the Labor Categor-

ies which are proposed and the job duties of all proposed Labor Categories, including the estimated quantity of proposed full-time equivalent (FTE) personnel and the associated direct productive labor hours (DPLHs) allocated by the Offeror to each Labor Category. As well, Offerors are to provide the resume of a proposed "Program Manager," and this resume is to be rated. "Experience" is to be evaluated by rating an Offeror's performances on past or current Contracts which are relevant (similar in nature, size in dollars, and complexity) to the scope of work required under the PBWS. "Past Performance" is to be evaluated by rating the experiences of an Offeror and its team members. Statement of Facts, Number 17.

Solicitation Number DE-RP52-09NA28681 includes a blanket Service Contract Act Wage Determination setting out the minimum wage for a range of different Labor Categories. DOE has not, however, set out the Labor Categories to be used for performance under the PBWS; in Questions and Answers provided to Offerors before the submission of Competitive Proposals, DoE has explained that this Competition requires each Offeror to propose the applicable Labor Categories which that Offeror supposes are appropriate for the requirements of the PBWS. Likewise, DoE has explained that it is left to Offerors to propose particular DPLHs as appropriate to that Offeror's "Best Approach" to performing the PBWS. DoE expects Offerors "to propose the appropriate staffing levels to accomplish the PBWS as well as demonstrate to the Government a sound under-

standing of the requirement." Indeed, it is the particular DPLHs proposed by each Offeror which is

that Offeror's obligation to deliver support services, i.e., the successful Offeror must deliver yearly

neither less than ninety-five percent, nor more than one-hundred five percent, of the estimated

DPLHs which that Offeror proposes to deliver. Statement of Facts, Number 18.

The PBWS itself sets out thirteen "Performance Objectives," these broken-down into broad

categories, i.e., "Complete adjudicative and processing tasks." Included with Solicitation Number

DE-RP52-09NA28681 is a Schedule, L-2 "Staffing Plan Summary," which requires Offerors to

"identify" the estimated quantity of FTEs and associated DPLHs allocated to each Labor Category

for the Base period and for each Option year. The Labor Categories in Schedule L-2 are segregated

into only five PBWS "Areas:" "Program Management," "Training," "Adjudication," "Remote Per-

sonnel Security Interviews," and "Additional PBWS Areas." Space is provided in Schedule L-2 for

four discrete Labor Categories within each of the only five PBWS "Areas." Statement of Facts, Num-

ber 19.

The support services required under Solicitation Number DE-RP52-09NA28681 are currently

being provided by NetGain Corporation, Knoxville, Tennessee (NetGain). NetGain has provided

these administrative and technical support services since November 2004. NetGain is furnishing

these administrative and technical support services with a staff of over 100 persons. The period of

**Redacted Version**

performance of NetGain's support services Contract extends through November 17th, 2009. While

the Acquisition Plan characterizes the facilities and equipment at Kirtland Air Force Base currently

being provided for use under NetGain's support services Contract as accommodating "approxi-

mately 100 individuals," Solicitation Number DE-RP52-09NA28681 itself provides that for the pro-

posed successor Contract, DOE will "furnish the Contractor office space for approximately 80 indi-

viduals on an as-required basis." Statement of Facts, Number 20.

Solicitation Number DE-RP52-09NA28681 announces a Best Value Trade-off:

> The Government intends to award one contract to the responsible Offeror whose pro-
> posal is responsive to the solicitation and is determined to be the best value to the Gov-
> ernment. Selection of the best value to the Government will be by use of the trade-off
> process described in FAR Part 15.101-1 [Federal Acquisition Regulation 15.101-1]. The
> process permits tradeoffs between cost and technical evaluation criteria and allows the
> Government to accept other than the lowest cost offered.

M002 BASIS OF CONTRACT AWARD (FEB 2005). Statement of Facts, Number 21.

The four announced Evaluation Criteria "when combined, are significantly more important

than cost; however cost will contribute substantially to the selection decision." Solicitation Number

DE-RP52-09NA28681 goes on:

> The Government is more concerned with obtaining a superior Technical proposal (the
> four criteria) than making an award at the lowest total probable cost. However, the Gov-
> ernment will not make an award at a price premium it considers disproportionate to the
> benefits associated with the evaluated superiority of one Offeror's Technical Proposal

over another. Thus, to the extent that Offerors' Technical Proposals are evaluated as close or similar in merit, the total probable cost is more likely to be a determining factor.

M002 BASIS OF CONTRACT AWARD (FEB 2005). Statement of Facts, Number 22.

Solicitation Number DE-RP52-09NA28681 provides that DoE will "determine probable cost in accordance with FAR 15.404-1(d) [Federal Acquisition Regulation 15.404-1(d)] and use it to determine the best value . . ." The Solicitation provides also that:

> The burden of proof for credibility of proposed cost/price rests with the Offeror. Unrealistically low or high proposed costs or prices may be grounds for eliminating a proposal from consideration either on the basis that the Offeror does not understand the requirements or has made an unrealistic offer.

L004 PROPOSAL PREPARATION INSTRUCTIONS: VOLUME III—COST PROPOSAL (FEB 2005)(a)(4). Likewise:

> An unrealistic or unreasonable cost proposal also may be evidence of the Offeror's lack of or poor understanding of the requirements of the solicitation, and thus may adversely affect the Offeror's rating on the Technical Proposal criteria.

M004 COST PROPOSAL (SEP 2008). Statement of Facts, Number 23.

Federal Acquisition Regulation 15.404-1(d)(1) provides that "cost realism analysis" is "the process of independently reviewing and evaluating specific elements of each offeror's proposed cost estimate to determine whether estimated proposed cost elements are realistic for the work to be performed, reflect a clear understanding of the requirements, and are consistent with the uni-

que methods of performance and materials described in the offeror's technical proposal." Statement of Facts, Number 24.

Solicitation Number DE-RP52-09NA28681 announces that DoE "intends to evaluate proposals and award a contract without discussions with Offerors (except clarifications as described in FAR 15.306(a) [Federal Acquisition Regulation 15.306(a)]). Therefore, the Offeror's initial proposal should contain the Offeror's best terms for both a technical and cost standpoint." Statement of Facts, Number 25.

### THE COMPETITIVE PROPOSALS

Nine Competitive Proposals were received at closing on February 11th, 2009. One of the nine Competitive Proposals was rejected without evaluation because that Offeror failed to provide base labor rates. Three of the remaining eight Competitive Proposals were eliminated from consideration after the DOE Technical Representative concluded that each of these three Offerors was adjectively rated as "Less Than Satisfactory" on one or more of the four announced Evaluation Criteria. Statement of Facts, Number 26.

DOE wrongly determined that none of the nine Offerors had taken any exceptions, or had proposed any deviations to the terms and conditions of the Solicitation. There were no discussions with

Synergy Solutions and no changes to the Competitive Proposals were allowed for Synergy Solutions

or for any other of the Offerors save Santa Fe Protective Services. Statement of Facts, Number 27.

<u>SYNERGY SOLUTIONS' COMPETITIVE PROPOSAL</u>

Synergy Solutions proposes to deliver 

. Synergy Solutions proposes a total

estimated price of $ ▮▮▮▮ over the five-year term of the proposed Contract. Statement of Facts,

Number 28.

Synergy Solutions completed and returned Contract Clauses B010, and B015 with its Com-

petitive Proposal, this as required by Solicitation Number DE-RP52-09NA28681. Contract Clauses

B010 and B015 implement estimated Level of Effort (LOE)/Direct Productive Labor Hours (DPLH)

provisions wherein the successor Contractor is obligated to deliver yearly neither less than ninety-

five percent nor more than one-hundred five percent of the total negotiated DPLHs. Synergy

Solutions is required under Contract Clauses B010 and B015 to deliver ▮▮▮▮▮▮ in each of

the two Base years and in each of the three Option years. Statement of Facts, Number 29.

As for its Staffing Plan, Synergy Solutions proposes to deliver ▮▮▮▮▮▮▮▮

**Redacted Version**
- 16 -

███████████████████████████████████████

███████████████████████████████████████

██ ]. Statement of Facts, Number 30.

SANTA FE PROTECTIVE SERVICES' COMPETITIVE PROPOSAL

Santa Fe Protective Services did not return with its Competitive Proposal, as required, the entirety of Section B, the Proposal Schedule, of Solicitation Number DE-RP52-09NA28681. There are two pages from Solicitation Number DE-RP52-09NA28681 which are missing from Santa Fe Protective Services' Competitive Proposal, and these two pages set out the obligation of each Offeror to deliver a specified number of DPLHs in each year of the five-year term of the proposed Contract. Statement of Facts, Number 31.

Santa Fe Protective Services did not complete and return Contract Clauses B004, B010, and B015 with its Competitive Proposal as required by Solicitation Number DE-RP52-09NA28681. Contract Clauses B010 and B015 implement estimated Level of Effort (LOE)/Direct Productive Labor Hours (DPLH) provisions wherein the successor Contractor is obligated to deliver yearly neither less than ninety-five percent nor more than one-hundred five percent of the total negotiated DPLHs. Because Contract Clauses B010 and B015 are not completed as required, Santa Fe Protective Services has no obligation in its Competitive Proposal as submitted to deliver any particular

number of DPLHs in either of the two Base years or in any of the three Option years. Statement of Facts, Number 32.

In its Cost Proposal Santa Fe Protective Services proposes to deliver [███████████████████ ███████████████████████████████]. Santa Fe Protective Services proposes total estimated Costs, including New Mexico Gross Receipts Tax, of $33,847,685 and Fixed-Fee of $2,230,608. Santa Fe Protective Services proposes a total estimated price of $36,903,294 over the five-year term of the proposed Contract. Statement of Facts, Number 33.

As for its Staffing Plan, Santa Fe Protective Services proposes to deliver [███████████████



███████. Statement of Facts, Number 34.

### THE EVALUATION

The DOE Technical Representative completed his evaluation and adjectival ratings of the Offerors' Technical Proposals, and his review of the Offerors' Cost Proposals, on August 5th, 2009. This is a tabular presentation of his findings and his recommendations:

**Redacted Version**

- 18 -

| OFFEROR | Approach | Staffing Plan & Program Manager | Experience | Past Performance | Proposed Cost & Fixed-Fee | Proposed DPLHs | Adjusted DPLHs | Probable Cost & Fixed-Fee |
|---|---|---|---|---|---|---|---|---|
| SSI | ▮ | ▮ | ▮ | ▮ | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
| SFPS | ▮ | ▮ | ▮ | ▮ | $36,903,294 | [REDACTED] | [REDACTED] ] | $42,269,948 |
| C | ▮ | ▮ | ▮ | ▮ | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
| D | ▮ | ▮ | ▮ | ▮ | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
| E | ▮ | ▮ | ▮ | ▮ | [REDACTED] | | [REDACTED] | [REDACTED] |

"SSI" is Synergy Solutions, Incorporated. "SFPS" is Santa Fe Protective Services. "E" is the adjectival rating for "Excellent." "G" is the adjectival rating for "Good." "S" is the adjectival rating for "Satisfactory." "Proposed DPLHs" are the DPLHs proposed by each of the five Offerors whose Competitive Proposals were adjectively rated by the DOE Technical Representative. "Adjusted DPLHs" are the DPLHs for each of these five Offerors as adjusted by the DOE Technical Representative in his technical review of the Cost Proposals. Statement of Facts, Number 35.

When the DOE Technical Representative reviewed Synergy Solutions' Competitive Proposal and compared Synergy Solutions' Competitive Proposal against the IGCE, he [REDACTED]

**Redacted Version**

- 19 -

████████████████████████████████████████████

████████████████████████████████ ]. This is his rationale:



]

Statement of Facts, Number 36.

When the DOE Technical Representative reviewed Santa Fe Protective Services' Competitive Proposal and compared Santa Fe Protective Services' Competitive Proposal against the IGCE, he added [██████████████████████████████████████ ]. This is his rationale:

"Paragraph 1" mentioned in this rationale details the DOE Technical Representatives' [███████

███████████████████████████████████████████████████████████████████████

███]. Statement of Facts, Number 37.

The Cost Realism analysis of Synergy Solutions' Cost Proposal finds that Synergy Solutions has

[████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███]. This is the ultimate finding on Synergy Solutions' Cost Proposal:



Statement of Facts, Number 38.

The Cost Realism analysis of Santa Fe Protective Services' Cost Proposal finds that Santa Fe Pro-

tective Services has [██████████████████████████████████████████████]. This is

the ultimate finding on Santa Fe Protective Services' Cost Proposal:



.

Just how Santa Fe Protective Services has [███████████████████████████

███████████████]. Statement of Facts, Number 39.

The Probable Cost adjustment made by DOE for Santa Fe Protective Services is the largest ad-

justment made to Proposed Cost. Here is a tabular presentation of the Offerors' Proposed Cost and

Fixed-Fee, the Probable Cost and Fixed-Fee as determined by DOE, and the Difference, both in dol-

lars and in percentage of each Offeror's Proposed Cost and Fixed-Fee:

| Offeror | Proposed Cost & Fixed-Fee | Probable Cost & Fixed-Fee | Difference | Percentage Difference |
|---------|---------------------------|---------------------------|------------|-----------------------|
| SSI | ███████ | ███████ | ███████ | ████ |
| SFPS | $36,903,294 | $42,269,948 | $5,366,654 | 14.5% |
| C | ███████ | ███████ | ███████ | 4.6% |
| D | ███████ | ███████ | ███████ | 10.1% |
| E | ███████ | ███████ | ███████ | 4.9% |

**Redacted Version**

Statement of Facts, Number 40.

THE SOURCE SELECTION DECISION

The Contracting Officer made the Source Selection Decision and she has documented this Source Selection Decision. This document is dated the same day as the DOE Technical Representative's evaluation and adjectival ratings of the five Offerors' Technical Proposals, and his review of the five Offerors' Cost Proposals, that is, the Source Selection Decision is dated August 5th, 2009. Statement of Facts, Number 41.

The Contracting Officer accepts the DOE Technical Representative's ratings of the Technical Proposals and also the DOE Technical Representative's review of the Cost Proposals. Likewise the Contracting Officer does not question the Cost Realism analysis or the DOE Technical Representative's adjustments for purposes of Cost Realism to the DPLHs proposed by each of the five Offerors. Statement of Facts, Number 42.

The Contracting Officer relies on the primacy of the four announced Evaluation Criteria (these are "significantly more important than cost") as justification for DOE's not evaluating the Cost Proposals of three Offerors whose Technical Proposals received one or more "Less Than Satisfactory" adjectival ratings on the four stated Evaluation Criteria. But at the same time the Contracting Officer discounts the better adjectival rating achieved by Synergy Solutions on the ████████████████

**Redacted Version**

- 23 -

████████████████████, here by characterizing the Technical advantage for Synergy Solutions' Competitive Proposal as only "somewhat better" than Santa Fe Protective Services when the adjectival ratings themselves say that an "Excellent" rating (Synergy Solutions' rating) demonstrates "a superior capability to successfully perform the contract" whereas a "Good" rating (Santa Fe Protective Services' rating) demonstrates only "an above average capability to successfully perform the contract." Statement of Facts, Number 43.

The Contracting Officer discounts the lower adjectival rating given Santa Fe Protective Services on the Evaluation Criterion for ███████████████████████ ████████████████████████████████████ █████████]:

█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Statement of Facts, Number 44.

The Contracting Officer concludes that this ██████████████████████████████████████████████████" The problem, however, is that this "correction"

**Redacted Version**

- 24 -

requires a change to Santa Fe Protective Services' Competitive Proposal, and discussions with the five Offerors whose Competitive Proposals were the subject of the Cost evaluations were not convened. Nor were Offerors other than Santa Fe Protective Services given an opportunity to change their Competitive Proposals. Statement of Facts, Number 45.

In her Source Selection Decision, the Contracting Officer does not examine the estimated Costs and Fixed-Fee proposed by Synergy Solutions and by Santa Fe Protective Services in their Competitive Proposals. Instead, the Contracting Officer examines the Probable Cost and Fixed-Fee for Synergy Solutions and for Santa Fe Protective Services determined by DOE. The DOE-determined Probable Cost and Fixed-Fee for Santa Fe Protective Services considers [███████ ████████████████████████████████████████████████ ████████████████████████████████████]:



**Redacted Version**

Statement of Facts, Number 46.

In her Best Value Trade-off analysis, the Contracting Officer trades-off Synergy Solutions'

Technical advantage (per the Solicitation, this Technical advantage is "significantly more impor-

tant" than Cost) against that which she supposes is Santa Fe Protective Services' Cost advantage.

But this Cost "advantage" for Santa Fe Protective Services is premised on DOE's determination

of Probable Cost and Fixed-Fee, not on the estimated Cost and Fixed-Fee proposed by Synergy

Solutions and by Santa Fe Protective Services in their Competitive Proposals:

> In this instance, the SSI and SFPS technical proposals are close or similar in merit. SSI's
> proposal presents no substantial competitive advantage to that of SFPS in terms of over-
> all technical quality, and its moderately better evaluation with respect to one of the four
> criteria ultimately does not justify a much higher price. Therefore, SFPS' proposal repre-
> sents the best value for the Government given that it has the lowest probable cost of all
> Offerors and is approximately ██████████ less than SSI's.

Statement of Facts, Number 47.

The Contracting Officer ranks all five Competitive Proposals in descending order for the pur-

pose of her Best Value Trade-off analysis. Santa Fe Protective Services is ranked first, and then

Synergy Solutions is next. Statement of Facts, Number 48.

THE AWARD

On August 6th, 2009 the Contracting Officer wrote Santa Fe Protective Services to notify

Santa Fe Protective Services that its Competitive Proposal had been selected for Contract award.

Redacted Version

The Contracting Officer attached "a PDF copy of the executed contract for your records." Statement of Facts, Number 49.

Contract Number DE-AC52-09NA28681, the executed Contract enclosed with the Contracting Officer's letter of August 6th, 2009, changes Santa Fe Protective Services' Competitive Proposal. Specifically, Contract Clauses B004, B010, and B015, which were required to be submitted with Santa Fe Protective Services' Competitive Proposal and yet were not, are now completed. Contract Clauses B010 and B015 implement estimated Level of Effort (LOE)/Direct Productive Labor Hours (DPLH) provisions wherein the successor Contractor is obligated to deliver neither less than ninety-five percent nor more than one-hundred five percent of the total negotiated DPLHs. Because Contract Clauses B010 and B015 were not completed as required, Santa Fe Protective Services had no obligation in its Competitive Proposal as submitted to deliver any particular number of DPLHs in either of the two Base years or in any of the three Option years. With the changes incorporated in Contract Number DE-AC52-09NA28681, Santa Fe Protective Services is now obligated to deliver neither less than ninety-five percent nor more than one-hundred five percent of an estimated [██████████] in each year of the Base period and in each Option year, and DOE is obligated to pay a Fixed-Fee based on this estimated [██████████] .This is how Santa Fe Protective Services' Fee is fixed. Statement of Facts, Number 50.

**Redacted Version**

And yet Contract Number DE-AC52-09NA28681 is awarded based on Santa Fe Protective Services' Competitive Proposal, not on DOE's determination of Probable Cost. That is, Contract Number DE-AC52-09NA28681 requires delivery of neither less than ninety-five percent nor more than one-hundred five percent of an estimated ██████████] in each year of the Base period and in each Option year, and DOE is obligated to pay a Fixed-Fee based only on this estimat-ed ██████████]. Contract Number DE-AC52-09NA28681 provides for total estimated Costs of $33,847,685 and for total Fixed-Fee of $2,230,608 over its five-year term. Statement of Facts, Number 51.

---

ARGUMENT

---

**I. There Were Communications With Santa Fe Protective Services, And These Communications Were Unlawful Discussions.**

It is beyond cavil that Santa Fe Protective Services did not complete and return Contract Clauses B004, B010, and B015 with its Competitive Proposal as required by Solicitation Number DE-RP52-09NA28681. Contract Clauses B010 and B015 implement estimated Level of Effort (LOE)/Direct Productive Labor Hours (DPLH) provisions wherein the successor Contractor is obligated to deliver yearly neither less than ninety-five percent nor more than one-hundred five percent of the total ne-gotiated DPLHs. Contract Clauses B004, B010, and B015 are on the last two pages of Section B, the

**Redacted Version**

Proposal Schedule, of Solicitation Number DE-RP52-09NA28681 and when completed they are an essential and material part of the Offerors' Competitive Proposals.

Because Contract Clauses B004, B010, and B015, which were required to be submitted with Santa Fe Protective Services' Competitive Proposal and yet were not, are completed in Contract Number DE-AC52-09NA28681, the executed Contract enclosed with the Contracting Officer's letter of August 6th, 2009, there must have been communications between DOE and Santa Fe Protective Services after Competitive Proposal submission on February 11th, 2009 and before Contract award on August 6th, 2009.

These communications were unlawful discussions. These communications were discussions because they resulted in changes to Santa Fe Protective Services' Competitive Proposal. These discussions were unlawful because not one of the five Offerors whose Cost Proposals were evaluated by DOE other than Santa Fe Protective Services was afforded discussions and given an opportunity to change its Competitive Proposal.

Solicitation Number DE-RP52-09NA28681 reserves to DOE the right only to conduct "clarifications," these in accordance with Federal Acquisition Regulation 15.306(a). Per Federal Acquisition Regulation 15.306(a)(2) "clarifications" are "limited exchanges" wherein Offerors are afforded an opportunity to provide past performance information when they have not had a previous opportu-

**Redacted Version**
- 29 -

nity to do so, else to resolve minor or clerical errors in their Competitive Proposals. "Discussions,"

on the other hand, are communications about the substance of a Competitive Proposal which close

with an opportunity for Competitive Proposals to be altered. Federal Acquisition Regulation 15.306-

(d).

"Clarifications" are communications which "*shall not be used to cure proposal deficiencies or
material omissions, materially alter the technical or cost elements of the proposal, and/or otherwise
revise the proposal.*" Federal Acquisition Regulation 15.306(b)(2).

The Government Accountability Office explains that "the acid test for deciding whether an

agency has engaged in discussions is whether the agency has provided an opportunity for proposals

to be revised or modified." *Computer Sciences Corp.; Unisys Corp.; Northrop Grumman Information

Technology, Inc.; IBM Business Consulting Services-Federal*, B-298494.2 et al., May 10th, 2007, at 9-10,

13, *2007 U.S. Comp. Gen. LEXIS 101, *19, *27-*28.*

Santa Fe Protective Services' failure to complete and return Contract Clauses B004, B010, and

B015 with its Competitive Proposal as required by Solicitation Number DE-RP52-09NA28681 was

not just a minor or clerical error, and it certainly had nothing at all to do with past performance

information.

Contract Clauses B010 and B015, when completed, limit the Fixed-Fee proposed by Santa Fe Protective Services to the actual number of DPLHs furnished each year—if at least ninety-five percent of the estimated total number of DPLHs that Santa Fe Protective Services proposes to deliver for that year are furnished, then the entirety of the Fixed-Fee is paid, and this whether the actual DPLHs delivered are in fact ninety-seven percent, or one-hundred four percent of the estimated total number of DPLHs for that year. It is this basis on which Santa Fe Protective Services' Fee is fixed—otherwise, and this is the basis on which Santa Fe Protective Services' Fixed-Fee was evaluated, Santa Fe Protective Services' Fixed-Fee is in fact an unlawful cost-plus-percentage-of-cost arrangement that is void *ab initio* because it violates 41 U.S.C. § 254(b). *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1150 (Fed. Cir. 1983).

Just as the Federal Circuit held in *Urban Data*, without completed Contract Clauses B010 and B015, Santa Fe Protective Services' Fixed-Fee would be unlawful because: (1) Santa Fe Protective Services' Fixed-Fee would be paid on a predetermined percentage rate; (2) the predetermined percentage rate would be applied to actual Costs; (3) Santa Fe Protective Services' entitlement would be uncertain at Contract award, and (4) Santa Fe Protective Services' entitlement would increase commensurately with increased actual Costs. *Id.*

So the communications between DOE and Santa Fe Protective Services after the submission of Competitive Proposals on February 11th, 2009 and before Contract award on August 6th, 2009 were more than "clarifications," and in fact were "discussions."

And these discussions were unlawful and in violation of procurement Statute and Regulation. Procurement Statute requires that discussions, if held, must be convened with *all* Offerors who are being considered for Contract award. 41 U.S.C. § 253b(d)(1)(A) (A parallel provision for the Military Departments appears at 10 U.S.C. § 2305(b)(4)(A)(i)). This requirement of the procurement Statutes is implemented by Federal Acquisition Regulation 15.306(d)(3). When discussions are convened but not held with all of the Offerors being considered for Contract award, this Court has held such Agency action to be a significant and prejudicial procurement process error. *Dynacs Engineering Company, Inc. v. United States*, 48 Fed. Cl. 124, 130, 136-137 (2000).

What is the proper remedy for this significant and prejudicial procurement process error?

This procurement process is premised on the submission of Competitive Proposals which are to contain each Offeror's "best terms." Solicitation Number DE-RP52-09NA28681 is being competed on a Best Value Trade-off source selection process, Federal Acquisition Regulation 15.101-1, not on a lowest-price, technically acceptable source selection process, Federal Acquisition Regulation 15.101-2. There is no point to now opening discussions to all of the Offerors, just as there would be

no point in an evaluation of any revised Competitive Proposals, since inviting revised Competitive Proposals would result only in an auction of these support services on a lowest price, technical acceptable source selection process, not in an exercise of Contracting Officer judgment as is required by the Best Value Trade-off source selection process.

The fair and equitable remedy here is to now order DOE to disqualify Santa Fe Protective Services' Competitive Proposal as one which proffers an unlawful cost-plus-percentage-of-cost Contract and to remand this Civil Action to DOE with instruction to make a new Contract award from among the remaining four Competitive Proposals whose Cost Proposals have been evaluated by DOE. *Diversified Maintenance Systems, Inc. v. United States*, 74 Fed. Cl. 122, 127 (2006).

## II.  This Best Value Trade-off Analysis Is Not Grounded In Reason.

A Best Value Trade-off analysis must be documented as is required by Federal Acquisition Regulation 15.308, and this documented Best Value Trade-off analysis must be "grounded in reason." Only if a Best Value Trade-off analysis is "wholly without reason" is this Best Value Trade-off analysis not so grounded. *TRW, Inc. v. Widnall*, 98 F.3d 1325, 1328 (Fed. Cir. 1996). A Best Value Trade-off analysis is wholly without reason if it is not logical or if it significantly differs from the evaluation scheme which was publicly disclosed. *Serco, Inc. v. United States*, 81 Fed. Cl. 463, 496-497 (2008).

**Redacted Version**

- 33 -

This "grounded in reason" test is further explicated in the procurement Statutes: 41 U.S.C. § 253b(d)(3) requires that Awards shall be made "considering only cost or price and the other factors included in the solicitation." (A parallel provision for the Military Departments appears at 10 U.S.C. § 2305(b)(4)(C)). These statutory requirements abjure Agencies from making Contract awards when they use a significantly different basis in making these Contract awards than that which was publicly disclosed. *Banknote Corporation of America, Inc. v. United States*, 56 Fed. Cl. 377, 386-387 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

Trading-off an Offeror's Technical advantage against DOE's perception of the lowest Cost offered is not logical. The Questions and Answers provided to prospective Offerors before the submission of Competitive Proposals explained that it was left to Offerors, not to the DOE Technical Representative, "to propose the appropriate staffing levels" and a "Best Approach" to the requirements of the PBWS. The Cost "advantage" for Santa Fe Protective Services on which this Contract award is premised depends on DOE's determination of Probable Cost and Fixed-Fee, not on the estimated Cost and Fixed-Fee proposed by Synergy Solutions and by Santa Fe Protective Services in their Competitive Proposals.

Trading-off an Offeror's Technical advantage against DOE's Probable Cost determination, rather than against an Offeror's Proposed Cost from its Competitive Proposal, is significantly different

from the Best Value Trade-off which is announced in Solicitation Number DE-RP52-09NA28681. The point of a Cost Realism analysis, per Federal Acquisition Regulation 15.404-1(d)(1), is to determine Agency confidence in estimated Costs which are to be traded-off. Here, just as in *Bechtel Hanford, Inc.*, B-292288, B-292288.2, B-292288.3, August 13th, 2003, at 10-11, *2003 U.S. Comp. Gen. LEXIS 187, *22*, the promised Best Value Trade-off requires DOE to evaluate realistic Competitive Proposals "more favorably than unrealistic proposals in determining which proposal represented the best value to the government." That has not happened—instead this Contracting Officer implausibly trades-off Synergy Solutions' Technical advantage against DOE's Probable Cost determination for Santa Fe Protective Services.

And DOE's Probable Cost determination for Santa Fe Protective Services reveals the real truth—DOE places little confidence in Santa Fe Protective Services' Proposed Cost and Fixed-Fee because DOE finds it necessary to make a 14.5 percent upward adjustment in Santa Fe Protective Services' Proposed Cost and Fixed-Fee.

Federal Acquisition Regulations 1.102(b)(3) and 1.102-2(c)(3) obligate Agencies to act with integrity, fairness, and openness. *Dynacs Engineering*, 48 Fed. Cl., at 131. An implausible Best Value Trade-off is not fair. A complete remedy for the significant and prejudicial procurement process

errors here requires that a new Integrated Product Team be now appointed to make a new Contract award from among the four remaining Competitive Proposals.

### III. Discounting the DOE Technical Representative's Cost Realism Adjustment Is Irrational And Arbitrary.

It is irrational and arbitrary to conclude, as does this Contracting Officer, that the DOE Technical Representative's Cost Realism Adjustment is insignificant and that the lower adjectival rating given Santa Fe Protective Services on the Evaluation Criterion for the ███████████████████ ███████████████] is "only informational" and "readily correctible."

By specifically incorporating Federal Acquisition Regulation 15.404-1(d)(1), the evaluation scheme announced in Number DE-RP52-09NA28681 necessarily requires that DOE's Cost Realism analysis will be used to verify Offerors' "understanding of the requirements." The published Questions and Answers confirm this evaluation scheme. But the promised evaluation scheme did not happen.

The 14.5 percent upward adjustment in Santa Fe Protective Services' Proposed Cost and Fixed-Fee which is necessitated by the DOE Technical Representative's ████████████████████ ████████████████████████████████████████████] does not warrant the Contracting Officer's conclusion that the ██████████████████████████████████████████ There is

**Redacted Version**

- 36 -

here no meaningful consideration, as promised, of Cost Realism. *Serco, Incorporated*, B-298266, August 9th, 2006, at 8-9, *2006 U.S. Comp. Gen. LEXIS 131, *16-*18.*

The problem with this Contracting Officer's conclusory, bare-bones Best Value Trade-off is its lack of any substantive content—it is not apparent that the Synergy Solutions and the Santa Fe Protective Services Technical Proposals are ███████████████ when as a result of the DOE Technical Representative's ████████████████████████████████████ ███████████████ DOE finds it necessary to make a 14.5 percent upward Cost Realism adjustment in Santa Fe Protective Services' Proposed Cost and Fixed-Fee.

This Contracting Officer's Best Value Trade-off, just as her discounting the better adjectival rating achieved by Synergy Solutions on the ███████████████████████████ ███ ] and her ignoring the significance of the DOE Technical Representative's ███████████ █████████████████████████████████ , is a summary, unreasoned "relisting [of] the adjectival ratings that gave rise to the technical ranking," this followed by "formulaic incantations [which] particularly miss the mark" when, as here, there is a fatal confusion between Proposed Cost and Probable Cost. *Serco*, 81 Fed. Cl., at 499.

---

## CONCLUSION

---

For all of the reasons set forth in the foregoing Brief in Support of Plaintiff's Motion for Judgment on the Administrative Record, Synergy Solutions respectfully requests that the Court enter Judgment for Synergy Solutions on this Administrative Record, RCFC 52.1(c)(1), together with: (1) a Declaration that the Contract award to Santa Fe Protective Services lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious; (2) a Declaration that the Contract award is arbitrary and capricious, unlawful, and in violation of applicable procurement Statute and Regulation; (3) a Declaration that Synergy Solutions is entitled to equitable relief, and money damages, for the Defendant's breach of its obligations under Federal Acquisition Regulations 1.102(b)(3) and 1.102-2(c)(3) to act with integrity, fairness, and openness, and to treat Offerors fairly; (4) a Permanent Injunction requiring the disqualification of Santa Fe Protective Services' Competitive Proposal and the appointment of a new Integrated Product Team, this followed by a new Contract award made from among the remaining four Competitive Proposals; and (5) such further and other relief as the Court may deem just and proper.

**Redacted Version**

Respectfully submitted,

/s/ Cyrus E. Phillips IV

_____

Cyrus E. Phillips IV

Virginia State Bar Number 03135

September 25th, 2009

Colonial Place I
2111 Wilson Boulevard, Suite 700
Arlington, Virginia 22201-3052

Telephone:          (703) 351-5044
Facsimile:          (703) 351-9292
Electronic Mail:    lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Synergy Solutions, Incorporated.

**Redacted Version**
- 39 -

CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, September 25th, 2009 a true and complete copy of this Plaintiff's Brief in Support of Plaintiff's Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Scott A. MacGriff, Esq.

Electronic Mail:    Scott.MacGriff@usdoj.gov

Attorney of record for Defendant,
U.S. Department of Energy.

/s/ Cyrus E. Phillips IV
 _____
Cyrus E. Phillips IV

**Redacted Version**